**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BAYSIDE ENTERPRISES, INC., et al., Respondents.**

**No. 75–1070.**

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1975.

Decided Dec. 10, 1975.

Robert A. Giannasi, Asst. Gen. Counsel, Washington, D. C., with whom John C. Miller, Acting Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Elliott Moore, Deputy Assoc. Gen. Counsel, and Elinor Hadley Stillman, Atty., Washington, D. C., were on brief for petitioner.

Alan J. Levenson, Portland, Me., with whom Clarke C. Hambley, Jr., and Levenson & Levenson, Portland, Me., were on brief for respondents.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The sole issue in this petition for enforcement of an order of the National Labor Relations Board is whether truck drivers who deliver feed to poultry farms are exempted from the National Labor Relations Act as agricultural laborers. 29 U.S.C. § 152(3). Respondents, Bayside Enterprises, Inc. and Poultry Processing, Inc.[1] are parent and subsidiary companies engaged in the production of broilers. Bayside directly controls chick hatchery facilities and several breeding farms. The chicks are raised by contracting farms while Bayside retains title to the birds. Poultry Processing, Inc., the subsidiary, operates a mill which provides feed to the independent farms and to an unrelated poultry company. The subsidiary also operates a processing plant which dresses the grown birds.[2] The employees in question work as truck drivers, transporting poultry feed from the mill to the contract farms.

In October 1973, Local 340 of the Truck Drivers, Warehousemen, and Helpers of America[3] requested recognition as the collective bargaining representative of the feed truck drivers. Bayside recognized the Union and began contract negotiations. After several sessions, the company broke off negotiations and informed the Union that it was not obligated to bargain because the employees were agricultural laborers and therefore not covered by the Act. In an unfair labor practice proceeding, the Board found that the drivers were not agricultural laborers within the meaning of § 2(3) of the Act, and that the respondents had violated §§ 8(a)(1) & (5) of the Act, 29 U.S.C. §§ 158(a)(1) & (5), by refusing to bargain with the Union. Bayside's sole contention is that the Board erred in concluding that the drivers were not agricultural laborers.

This court has previously addressed the issue presented in this case. In *NLRB v. Gass,* 377 F.2d 438, 444 (1st Cir. 1967), we held that feed truck drivers who were employed by an integrated poultry processing company were not agricultural laborers exempt from the Act. Respondents, however, point to several cases from other circuits which hold that employees engaged in similar work are exempt from the Act. *McElrath Poultry Co., Inc. v. NLRB,* 494 F.2d 518 (5th Cir. 1974); *Abbott Farms, Inc. v. NLRB,* 487 F.2d 904 (5th Cir. 1973); *NLRB v. Victor*

---

1. Penobscot Poultry Co. is a defunct subsidiary which provides the trade name for the company's products.

2. Poultry Processing, Inc. is a wholly owned subsidiary of Bayside Enterprises, Inc. They share the same corporate officers, and conduct business from the same offices. Employees, however, are employed by either Bayside or Poultry Processing. As the operations of the two companies are highly integrated, we will treat them as one business entity throughout and refer to them jointly as Bayside. Cf. *Wirtz v. Jackson & Perkins Co.,* 312 F.2d 48, 50 (2d Cir. 1963).

3. Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.

438

*Ryckebosch, Inc.*, 471 F.2d 20 (9th Cir. 1972); *NLRB v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969). We find these cases both distinguishable and unpersuasive.

■ Section 2(3) of the Act excludes from the definition of an employee, "any individual employed as an agricultural laborer". Since 1946, riders to the appropriation acts for the Board have regularly provided that the term "agricultural laborer" shall be defined against the background of the Fair Labor Standards Act, 29 U.S.C. § 203(f), which reads:

"'Agriculture' includes farming in all its branches and . . . includes . . . the raising of . . . poultry, and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ."

The Supreme Court has held that this definition has two distinct parts. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949). The first relates to actual farming operations, and the second, "includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations." *Id.* at 763, 69 S.Ct. at 1278. The activities included in the second portion of the definition, however, must be incident to the farming operations of the employer, and not the farming of another. *Id.* at 766, n. 15, 69 S.Ct. 1274; *Bowie v. Gonzalez*, 177 F.2d 11, 18 (1st Cir. 1941).

Respondents do not claim that the truck drivers are performing services within the first branch of the definition of agriculture. Rather, they contend that Bayside is engaged in farming and that the drivers are performing services incidental to that farming. The administrative law judge found that Bayside and its component parts constitute a single employer with common ownership, management and control of labor relations. *See NLRB v. Gass, supra; NLRB v. Lipman Brothers, Inc.*, 355 F.2d 15, 21 (1st Cir. 1966). As a whole, Bayside is a multi-faceted organization whose enterprises and purposes go beyond the bounds of farming.

The bulk of the capital and personnel of Bayside is devoted to the feed mill and the processing plant operations which are concededly not farming. The company does operate chick hatcheries and breeding farms which do constitute farming under the applicable statutes. 29 C.F.R. § 780.125(b) (1974). In the remaining segment of the business, the raising of chickens to maturity, the actual farming activity is done by the contract farmers. According to current Department of Labor regulations, retention of title to the poultry pending maturity on contract farms does not entitle a business to be classified as a farmer. 29 C.F.R. § 780.126 (1974).[4] Nor does Bayside's delivery of feed, however crucial to the development of poultry on the contract farms it may be, justify classifying Bayside as a farmer. Rather, the Bayside feed delivery system is part of a separate organization, supportive of agricultural activity, but not directly engaged in farming. *See* 29 C.F.R. § 780.126 (1974), *supra* n. 4; *Farmers Reservoir & Irrigation Co. v. McComb, supra*, 337 U.S. at 761, 69 S.Ct. 1274.

We therefore conclude that Bayside cannot be classified as a farmer for that portion of its business which supports the raising of poultry on contract farms.

4. "Feed dealers and processors sometimes enter into contractual arrangements with farmers under which the latter agree to raise to marketable size baby chicks supplied by the former who also undertake to furnish all the required feed and possibly additional items. Typically, the feed dealer or processor retains title to the chickens until they are sold. Under such an arrangement . . . [t]he activities of the feed dealer or processor . . . are not 'raising of poultry' and employees engaged in them cannot be considered agricultural employees on that ground . . . ."

Although Bayside is a farmer in relation to the chick hatcheries and breeder farms, the truck drivers are not employed incidental to or in conjunction with this limited farming activity. Consequently, they are not agricultural laborers within the meaning of the Act.

The cases cited by respondents are readily distinguishable by the character of the employing entity. In both *NLRB v. Strain Poultry Farms, Inc.,* and *Abbott Farms, Inc. v. NLRB, supra,*[5] the employers were primarily engaged in traditional agriculture, and, unlike Bayside, owned no processing plant to dress the poultry. The activities of the employees were found to be incidental to the agricultural functions of their employers. In contrast, Bayside's operations are not predominantly agricultural, and it cannot claim the exemption for most of its employees.

*The orders of the Board are enforced.*

---

5. The other cases cited by the respondents are summary denials of enforcement which rely on *Strain* and *Abbott. McElrath Poultry Co., Inc. v. NLRB, supra (Abbott); Victor Ryckebosch, Inc. v. NLRB, supra (Strain).*